# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DE Technologies, Inc., | ) | Cause No. 7:11-cv-00183-GEC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| IShop USA, Inc. and International | ) | Jury Trial Demanded |
| Checkout, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT ISHOP USA'S ORIGINAL ANSWER AND COUNTERCLAIMS

For its Answer to the Amended Complaint filed by Plaintiff DE Technologies, Inc. ("Plaintiff" or "DE Technologies"), Defendant IShop USA, Inc. ("IShop") answers and responds as follows.

## The Parties

1.  IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Amended Complaint and therefore denies the same.

2.  IShop admits that it is a corporation organized and existing under the laws of the State of California. IShop denies the remaining allegations contained in Paragraph 2 of the Amended Complaint.

3.  IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Amended Complaint and therefore denies the same.

## Jurisdiction and Venue

4.  IShop admits that Plaintiff purports to allege an action for patent infringement arising under Title 35 of the United States Code and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.  IShop denies the remaining allegations contained in Paragraph 4 of the Amended Complaint.

## General Allegations

5.  IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Amended Complaint and therefore denies the same.

6.  IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Amended Complaint and therefore denies the same.

7.  IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Amended Complaint and therefore denies the same.

8.  IShop admits that U.S. Patent No. 6,460,020 (the "'020 Patent") states on its face that it was issued by the United States Patent and Trademark Office on October 1, 2002.

IShop admits that a copy thereof is attached to the Amended Complaint as Exhibit A.  IShop denies all other allegations contained in Paragraph 8 of the Amended Complaint.

9. IShop admits that U.S. Patent No. 6,845,364 (the "'364 Patent") states on its face that it was issued by the United States Patent and Trademark Office on January 18, 2005. IShop admits that a copy thereof is attached to the Amended Complaint as Exhibit B.  IShop denies all other allegations contained in Paragraph 9 of the Amended Complaint.

10. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Amended Complaint and therefore denies the same.

11. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Amended Complaint and therefore denies the same.

12. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Amended Complaint and therefore denies the same.

13. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Amended Complaint and therefore denies the same.

14. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Amended Complaint and therefore denies the same.

15. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Amended Complaint and therefore denies the same.

16. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Amended Complaint and therefore denies the same.

17. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Amended Complaint and therefore denies the same.

### **The Defendants' Infringing Activities**

18. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Amended Complaint and therefore denies the same.

19. Denied.

20. Denied.

21. Denied.

22. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Amended Complaint and therefore denies the same.

23. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Amended Complaint and therefore denies the same.

24. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Amended Complaint and therefore denies the same.

25. IShop is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Amended Complaint and therefore denies the same.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

As a first and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, the '020 patent is invalid for failing to meet the statutory and decisional requirements for patentability, including those of 35 U.S.C. §§ 101, 102, 103 and/or 112.

### Second Affirmative Defense

As a second and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, the '364 patent is invalid for failing to meet the statutory and decisional requirements for patentability, including those of 35 U.S.C. §§ 101, 102, 103 and/or 112.

### Third Affirmative Defense

As a third and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, IShop does not infringe (not directly, contributorily, or by inducement) any claim of the '020 patent.

### Fourth Affirmative Defense

As a fourth and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, IShop does not infringe (not directly, contributorily, or by inducement) any claim of the '364 patent.

### Fifth Affirmative Defense

As a fifth and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, Plaintiff is barred from relief for any or all infringement of the '020 and '364 patents under the doctrine of laches.

### Sixth Affirmative Defense

As a sixth and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, Plaintiff is barred from relief for any or all infringement of the '020 and '364 patents under the doctrine of waiver.

### Seventh Affirmative Defense

As a seventh and separate defense, and solely by the way of an alternative defense and not to be construed as an admission, Plaintiff is barred from relief for any or all infringement of the '020 and '364 patents under the doctrine of equitable estoppel.

**Eighth Affirmative Defense**

On information and belief, Plaintiff is barred from obtaining relief for any or all infringement of the '020 and '364 patents for failure to satisfy the notice requirements of 35 U.S.C. § 287.

**Ninth Affirmative Defense**

On information and belief, Plaintiff is barred from obtaining relief for any or all infringement of the '020 and '364 patents for engaging in inequitable conduct as explained below.

**COUNTERCLAIMS**

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, IShop for its Counterclaims against Plaintiff, alleges as follows:

**The Parties**

1. IShop USA, Inc. ("IShop") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 20620 South Leapwood Ave., Suite F, Carlson, California 90746.

2. Upon information and belief, Plaintiff DE Technologies, Inc. ("DE Technologies") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1715 Pratt Drive, Suite 3500, Blacksburg, Virginia 24064.

**Jurisdiction and Venue**

3. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(B) and by virtue of DE Technologies' admissions in the Complaint that venue is proper in this district.

4. This Court has personal jurisdiction over DE Technologies.

5. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338.

**COUNT ONE: Declaratory Judgment of Non-Infringement of the '020 Patent**

6. Based upon DE Technologies' filing of its suit and IShop's affirmative defenses, an actual controversy has arisen and now exists between the parties as to whether IShop has directly and/or indirectly infringed any valid claim of the '020 Patent.

7. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., IShop requests a declaration from the Court that IShop has not infringed any valid claim of the '020 Patent, either directly, contributorily, or by inducement, or either literally or under the doctrine of equivalents.

8. The conduct of DE Technologies in alleging patent infringement has been willful, in bad faith, and/or in reckless disregard of the rights of IShop.

**COUNT TWO: Declaratory Judgment of Non-Infringement of the '364 Patent**

9. Based upon DE Technologies' filing of its suit and IShop's affirmative defenses, an actual controversy has arisen and now exists between the parties as to whether IShop has directly and/or indirectly infringed any valid claim of the '364 Patent.

10. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., IShop requests a declaration from the Court that IShop has not infringed any valid claim of the '364 Patent, either directly, contributorily, or by inducement, or either literally or under the doctrine of equivalents.

11. The conduct of DE Technologies in alleging patent infringement has been willful, in bad faith, and/or in reckless disregard of the rights of IShop.

### COUNT THREE: Declaratory Judgment of Invalidity of the '020 Patent

12. Based upon DE Technologies' filing of its suit and IShop's affirmative defenses, an actual controversy has arisen and now exists between the parties as to whether IShop has directly and/or indirectly infringed any valid claim of the '020 Patent.

13. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., IShop requests a declaration from the Court that each of the claims of the '020 Patent is invalid because it fails to comply with the provisions of the patent laws, 35 U.S.C. § 100 et seq., including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

### COUNT FOUR: Declaratory Judgment of Invalidity of the '364 Patent

14. Based upon DE Technologies' filing of its suit and IShop's affirmative defenses, an actual controversy has arisen and now exists between the parties as to whether IShop has directly and/or indirectly infringed any valid claim of the '364 Patent.

15. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., IShop requests a declaration from the Court that each of the claims of the '364 Patent is

invalid because it fails to comply with the provisions of the patent laws, 35 U.S.C. § 100 et seq., including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

### COUNT FIVE: Declaratory Relief Regarding Inequitable Conduct on Behalf of DE Technologies

16. Based upon DE Technologies' filing of its suit and IShop's affirmative defenses, an actual controversy has arisen and now exists between the parties as to whether IShop has directly and/or indirectly infringed any valid claim of the '020 and '364 patents.

17. On information and belief, IShop alleges as follows: A first basis for finding inequitable conduct is that DE Technologies deliberately withheld the existence and identity of other inventors of the claim invention from the United States Patent and Trademark Office ("PTO"). Ed Pool, Doug Mauer (collectively "the named inventors"), and/or their representatives breached their duty of candor by withholding this material information with intent to deceive.

18. The basis of the '020 and '364 patents is the U-Shop system, which was disclosed in DE Technologies' provisional patent application 60/033,984 (the "'984 application") and was developed by a number of individuals other than Ed Pool and Doug Mauer including: Ed Schwartz, Michael Bame, Russell Shock, and David Messner (collective "Other inventors").

19. In particular, David Messner was responsible for coding for the U-Shop system, including invention and creation of the database interfaces, *i.e.,* middleware, for accessing the various databases in the U-Shop system. David Messner began writing this and other code

after meeting with Ed Schwartz, Michael Bame, and/or Russell Shock to discuss the features and proposed functionality of the Ushop system, including how that system would allow for language selection, currency selection and access of databases containing price information, product codes and international shipping information.

20. David Messner also collaborated with Ed Schwartz, who was the individual primarily responsible for structuring, updating, and maintaining the various U-Shop databases. Ed Schwartz conceived, at least in part, the claimed system for accessing these databases, calculating some transaction costs, and allowing a customer to select a language and currency.

21. The involvement of these other inventors in the conception and reduction to practice of the U-Shop system and one or more of the claimed features in the '020 and '364 patents was never disclosed to the PTO.

22. Ed Pool and Doug Mauer, the named inventors of the '020 and '364 patents, were incapable of inventing the systems claimed therein. Ed Pool, in his own words, is not an "expert on computers," a "software engineer," or even a "database guy." Doug Mauer confirmed this, testifying that he was the "sole technical guy" named as an inventor on the patents-in-suit, but also admitting that he would not have known how to write the code for the U-Shop system.

23. There is a substantial likelihood that a reasonable PTO examiner would have considered knowledge of these other inventors important in deciding to allow the applications that issued as the '020 and '364 patents. For example, these other inventors would be

required to file inventors' declarations and review statements in DE's patent applications regarding their invention. Notably, these other inventors disagreed with Ed Pool's decision to file a patent application because, among other things, they believed the U-Shop system was not patentable.

24. A second basis for finding inequitable conduct is the false statements that Ed Pool and Doug Mauer made in sworn declarations submitted to the PTO in order to secure allowance of the '020 and '364 patents. Ed Pool and Doug Mauer breached their duty of candor by making these material and false statements with intent to deceive.

25. During prosecution of DE Tech's patents, at least two declarations were filed regarding the features of the U-Shop system. These declarations are the Second Supplemental Declaration of Ed Pool dated April 11, 2002, ("Pool Declaration") and the Declaration of Doug Mauer dated June 18, 2002 ("Mauer Declaration").

26. The Pool Declaration attaches printed copies of screen shots from the U-Shop web site, which are described as "a series of printouts of pages of a preliminary test web site" that was "operational prior to the Critical Date." The Pool Declaration defines "Critical Date" as prior to May 1996.

27. Paragraph 8 of the Pool Declaration states that prior to May 1996 the U-Shop web site was capable of "triggering an electronic process for confirming the existence of available funds."

28. Paragraph 7 of the Pool Declaration states that prior to May 1996 the U-Shop web site displayed the "the total charges for the transaction" to the user on a checkout page,

"reflecting element (f), determining a total cost of the transaction that includes a price of the product."

29. Paragraph 4 of the Pool Declaration states that prior to May 1996 the U-Shop web site "produced an electronic record constituting a 'commercial invoice', as that term is understood in the patent application." That paragraph also states that "[f]or testing purposes, the commercial invoice was printed from the electronic record established by the operation of the web site." Paragraph 8 of the Pool Declaration further states that prior to May 1996, part of the processing performed by the U-Shop web site and related databases included "generation of a commercial invoice, first in electronic form, and then printed as described above."

30. The Mauer Declaration states that Doug Mauer reviewed the content of the Pool Declaration and agreed that all of the statements therein were true. Specifically, the Mauer Declaration states: "I have reviewed the content of the Declaration and the content thereof is true of my own knowledge." Both Ed Pool and Doug Mauer swore that the content of these declarations was true and accurate.

31. In reality, the U-Shop web site was not capable of performing the functions of: (1) triggering an electronic process for confirming the existence of available funds; (2) calculating and displaying a total cost of the transaction; and (3) generating and/or printing an electronic title and/or commercial invoice as of May 1996.

32. The code for the U-Shop web site is attached to the '984 application that was filed on December 30, 1996. All of the code for the U-Shop web site is attached to that

application.

33. The computer code attached to the '984 application does not include code for performing the functions identified above in paragraph 95.

34. There is a substantial likelihood that a reasonable PTO examiner would have considered the false statements in the Pool and Mauer Declarations important in deciding whether to allow the applications that issued as the '020 and '364 patents; in particular, because these declarations were intended to antedate prior art that the examiner had previously suggested rendered the claims anticipated and/or obvious under 35 U.S.C. §§ 102 and 103. Indeed, the examiner's notice of allowability for the '020 patent states that certain prior art was "sworn behind by employing a 131 Declaration executed by applicant (Pool)."

35. A third basis for finding inequitable conduct is false statements made by both Ed Pool and Bruce Lagerman during an interview with the PTO examiner. Ed Pool and Bruce Lagerman breached their duty of candor by making these material and false statements with intent to deceive.

36. Specifically, during an interview with the PTO on January 3, 2002, the applicant and the PTO examiner agreed to add the limitation of "running a transaction program on a computer system so as to integrate" processes and components to all of the claims. During that interview, both Ed Pool and his attorney, Bruce Lagerman, stated to the PTO that as of that date they were unaware of any entity practicing the claimed invention.

37. In his deposition conducted by counsel for Dell, Ed Pool confirmed that he told the PTO examiner that as of January 3, 2002, he was unaware of any entity practicing the

claimed invention.

38. On information and belief, as of January 3, 2002, Ed Pool, Bruce Lagerman, and/or other DE representatives believed that a number of entities were practicing the claimed invention. For example, DE sent letters both before and soon after that date alerting various entities to its pending patent applications and suggesting that those entities seek a license to DE's intellectual property.

39. The PTO examiner viewed the statement that no one was practicing the claimed invention as of January 3, 2002, as important to allowance of the claims. Indeed, that statement is repeated multiple times in the official PTO record: in the interview summary and the notice of allowance. Moreover, there is a substantial likelihood that a reasonable PTO examiner would have considered this statement by Ed Pool and Bruce Lagerman important in deciding to allow of the patent claims because, *e.g.,* it evidenced that the applicant, his attorney and the PTO examiner shared a common understanding of the scope of the patent claims. This statement was also material to overcoming the rejections of obviousness, under 35 U.S.C. § 103, previously asserted by the examiner.

40. A fourth basis for inequitable conduct is prior art web sites, software and systems that the named inventors and/or their representatives were aware of, but did not disclose to the PTO during prosecution. The named inventors and/or their representatives breached their duty of candor by withholding material knowledge of these prior art web sites, software, and systems with intent to deceive.

41. Prior to filing the '984 application and the '020 and '364 patents, the named

inventors and/or their representatives were aware of certain e-commerce websites and companies offering e-commerce transaction programs including at least the following: Cyberian Outpost, Open Market, Planet Shopping, and Macromedia.

42. These websites and transaction programs allowed users in the United States and other countries to buy and sell goods online and were prior art under 35 U.S.C. § 102 to subject matter disclosed in the '984 application and the '020 and '364 patents.

43. None of these prior art websites and transaction programs were disclosed to the PTO during prosecution of the '020 and '364 patents, nor are they merely duplicative of the prior art before the PTO.

44. There is a substantial likelihood that a reasonable PTO examiner would have considered knowledge of these websites and transaction programs important in deciding whether to allow of the claims of the '020 and '364 patents, in particular, because these websites and transaction programs evidence that the claimed invention is anticipated and/or obvious under 35 U.S.C. §§ 102 and 103.

45. A fifth basis for finding inequitable conduct is statements the applicants made during prosecution that misrepresent the disclosure of the prior art Chelliah patent and the capabilities of the AVP tax engine. The named inventors and/or their representatives breached their duty of candor by materially misrepresenting the disclosure of Chelliah and the capabilities of the AVP tax engine with intent to deceive.

46. In the applicant's official response to the PTO dated January 5, 2000, the applicants falsely characterized the teachings of the Chelliah patent. Specifically, that

response states: "the AVP tax engine [discussed in the Chelliah patent] is well-known to be limited to sales taxes applied within the United States. The AVP tax engine does not address foreign duties and import/export taxes. Nor does this tax engine calculate taxes based upon the combined value of the shipping costs and the costs of the goods, as is done in the system of the present invention."

47. In truth, however, the "AVP tax engine" had the capability to address and was in use to calculate foreign duties and import/export taxes prior to the filing date of the '984 application and the '020 and '364 patents.

48. There is a substantial likelihood that a reasonable PTO examiner would have considered this statement important in deciding to allow the patent claims; in particular, because the named inventors and/or their representatives made this statement in an attempt to overcome an obviousness rejection previously made by the PTO examiner under 35 U.S.C. § 103.

49. Each of the five sets of acts plead in paragraphs 16-49 constitutes an intentional, material breach of the duty of candor to the PTO held by DE Technologies, the named inventors, and/or their representatives. Consequently, each of these five sets of acts constitutes a separate ground for finding inequitable conduct and holding the claims of the '020 and '364 patents unenforceable.

50. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., IShop requests a declaration from the Court that the '020 and '364 patents are unenforceable because of inequitable conduct before the PTO.

### Exceptional Case

51.     On information and belief, this is an exceptional case entitling IShop to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. § 285, as a result of, *inter alia*, DE Technologies' assertion of the Patents-in-suit against IShop with the knowledge that IShop does not infringe any valid or enforceable claim of the Patents-in-suit and/or that the Patents-in-suit are invalid and/or unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, IShop prays for judgment as follows:

a.  A judgment dismissing DE Technologies' Amended Complaint against IShop with prejudice;

b.  A judgment finding that DE Technologies is not entitled to the relief it requests or any of relief in this case;

c.  A judgment finding that DE Technologies is not entitled to an accounting or an award of damages, interest, or costs in this case;

d.  A judgment declaring that IShop has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the '020 Patent;

e.  A judgment declaring that IShop has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the '364 Patent

f. A judgment declaring that the '020 Patent is invalid and unenforceable;

g. A judgment declaring that the '364 Patent is invalid and unenforceable;

h. A judgment declaring that IShop has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '020 Patent;

i. A judgment declaring that IShop has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '364 Patent;

j. A judgment declaring that this case is exceptional and an award to IShop of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

k. A judgment declaring, limiting or barring DE Technologies' ability to enforce the '020 Patent in equity;

l. A judgment declaring, limiting or barring DE Technologies' ability to enforce the '364 Patent in equity;

m. A judgment declaring the '020 and '364 patents unenforceable because of inequitable conduct before the United States Patent and Trademark Office.

n. Such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38(b), IShop demands a trial by jury on all issues so triable.

Dated: August 31, 2011

Respectfully submitted,

  /s/ Arthur P. Strickland
Arthur P. Strickland
  VA. State Bar No. 13337
**STRICKLAND, DIVINEY & STRELKA**
P.O. Box 2866
Roanoke, VA 24001-2866
[Tel.] (540) 982-7787
[Fax] (540) 342-2909


Randall T. Garteiser
  Tex. Bar No. 24038912
  randall@glgnow.com
Christopher Johns
  Tex. Bar No. 24044849
  chris.johns@glgnow.com
Christopher A. Honea
  Tex. Bar No. 24059967
  chris.honea@glgnow.com
Michael Adelsheim
  Cal. Bar No. 268817
  michael@glgnow.com
**GARTEISER LAW GROUP, PC**
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415) 785-3762
[Fax] (415) 785-3805

**ATTORNEYS FOR ISHOP USA, INC.**